IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jeremy Wayne Watson, | ) | Civil Action No.  8:14-cv-01310-TLW-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local

Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be reversed and remanded for administrative action consistent with this recommendation,

pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On January 12, 2009, Plaintiff filed claims for DIB and SSI, alleging an onset of

disability date of December 31, 2008.  [R. 241–51.]  The claims were denied initially and

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

on reconsideration by the Social Security Administration ("the Administration") [R. 195–206].  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on July 21, 2010,  ALJ Ivar E. Avots conducted a de novo hearing on Plaintiff's claims.  [R. 42–89.]

The ALJ issued a decision on October 29, 2010, finding Plaintiff not disabled.  [R. 163–77.]  The ALJ determined that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and status post meniscal injury to the left knee with arthroscopic surgery, but that his impairments did not meet or medically equal a listed impairment.  [R.165–69, Findings 3 & 4.]  The ALJ assessed that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain additional limitations. Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for about 6 hours each out of an 8-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.

[R. 169, Finding 5.]  Based on this RFC, the ALJ found that Plaintiff could perform his past relevant work ("PRW") as a data entry worker.   [R. 176, Finding 6.] Thus, the ALJ found Plaintiff had not been under a disability as defined by the Act from December 31, 2008, through the date of the decision. [R. 176. Finding 7.] Additionally, based on the application for SSI, the ALJ found Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act ("the Act").

Plaintiff requested Appeals Council review of the ALJ's decision, and upon review, the Appeals Council remanded the case for further proceedings.   [R. 188–89.]

2

Specifically, the Appeals Council found that, although the ALJ found Plaintiff retained the RFC to perform his PRW as a data entry worker as it is generally performed in the national economy, the ALJ had failed to address Plaintiff's allegations that he had received special accommodations while employed for his father as a data entry clerk. [R. 188.] Also, the ALJ was directed to issue a new decision on Plaintiff's claims filed January 12, 2009, and his new claims filed on November 8, 2010. [R. 189.]

A second hearing was conducted on November 16, 2012, [R. 90–155] on Plaintiff's original applications for DIB and SSI, as well as his subsequently filed claims for both DIB and SSI filed. [R. 285–95.] The ALJ issued a decision on December 17, 2012, again finding Plaintiff not disabled. [R. 12–32.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2013, and had not engaged in substantial gainful activity since December 31, 2008, the alleged onset date. [R. 15, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: degenerative disc disease of the lumbar spine, status post meniscal injury to the left knee with arthroscopic surgery, status post C2 vertebral fracture, depression disorder, and anxiety disorder. [R. 15, Finding 3.] At Step 3, the ALJ determined Plaintiff's impairments did not meet or medically equal the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listings 1.02, 1.04, 12.04 and 12.06.[4] [R. 16–19, Finding 4.]

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[4]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911 and 416.925.

3

Before addressing Step 4, Plaintiff's ability to perform his PRW, the ALJ found

Plaintiff retained the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with certain additional limitations. Specifically, the claimant can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for about 4 hours and stand and/or walk for about 4 hours out of an 8 hour workday. The claimant must change positions every hour. The claimant can never use ladders, ropes, or scaffolds. The claimant can occasionally perform all other postural activities. The claimant must avoid concentrated exposure to extreme cold. The claimant must avoid all exposure to hazards, such as unprotected heights and dangerous machinery. The claimant can concentrate, persist, and work at pace sufficient to perform simple, routine, repetitive tasks at SVP levels 1 and 2 for extended periods of 2 hours during an 8 hour day. The claimant can interact occasionally with the public. The claimant can interact appropriately with coworkers and supervisors in a stable, routine setting.

[R. 19, Finding 5.]  Based on this revised RFC, the ALJ found at Step 4 that Plaintiff was

unable to perform any PRW.  [R. 30, Finding 6.]  Considering Plaintiff's age, education,

work experience, and RFC, however, the ALJ determined at Step 5 that there were jobs

that existed in significant numbers in the national economy that Plaintiff could perform.  [R.

30, Finding 10.]  Accordingly, the ALJ determined Plaintiff had not been under a disability

from December 31, 2008, through the date of the decision.  [R. 31, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals

Council declined review.  [R. 1–6.]  Plaintiff filed this action for judicial review on April 10,

2014.  [Doc. 1.]

### THE PARTIES' POSITIONS

4

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ applied an incorrect legal standard in determining whether Plaintiff's impairments met Listing 1.04 (disorders of the spine); failed to properly apply the treating physician rule in weighing medical opinions; and relied on flawed vocational expert ("VE") testimony. [Docs. 12, 14.]  The Commissioner, however, contends that none of Plaintiff's challenges to the ALJ's decision have any merit, and the ALJ's decision is supported by substantial evidence.  [Doc. 13.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

5

[Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

10

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

## C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

11

disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

_____

is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where

14

a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

**IV.    Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

15

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

16

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

Circuit has rejected a rule which would require the claimant to demonstrate objective

evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and

ordered the Commissioner to promulgate and distribute to all administrative law judges

within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the

17

> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

18

## APPLICATION AND ANALYSIS

**Relevant Medical History**

On or about September 18, 2006, Plaintiff slipped on some water at work injuring his left knee. [R. 434.] He reported sharp pain when he twisted or moved a certain way and that he could not walk on the knee. [*Id*.] Plaintiff was noted to ambulate with a cane with a slow antalgic gait. [R. 436.] He was also noted to have positive straight leg raises[9] with the reproduction of his symptoms as well as increased numbness and tingling in medial foot. [R. 436–37.] An MRI of the left knee demonstrated a small undersurface tear to the posterior horn of medial minuscus. [R. 437.] Plaintiff's pain was also noted to be consistent with lumbar radiculopathy in S1 distribution; Plaintiff also had positive straight leg raises. [*Id*.]

An independent medical evaluation was performed on April 24, 2007, by Dr. Glenn Scott ("Dr. Scott"). [R. 504–06.] Plaintiff complained of pain in his back extending down his left leg. [R. 505.] Plaintiff also reported that crutches were essential to his ability to ambulate because of the pain in his back and left leg when he attempted walking. [*Id*.] On examination, Dr. Scott noted good mobility in the cervical and thoracic spine as well as in the shoulders, elbows, wrists and hands. [*Id*.] Dr. Scott also noted that straight leg raises in a seated position were entirely negative bilaterally; in a supine position, straight leg raises were negative on the right and equivocal on the left. [*Id*.] Upon reviewing Plaintiff's MRI's, Dr. Scott noted his impressions as: desiccation at L4-5 and L5-S1 with mild disc space narrowing of the L5-S1 disc; a central left paracentral disc protrusion at L5-S1,

---

[9]The straight-leg raising test is used to indicate whether a disorder of the spine is present. *See, e.g., Hays v. Sullivan*, 907 F.2d 1453, 1456–59 (4th Cir. 1990).

closely approximating the left and right S1 nerve roots; and prominent central bulging L4-L5 closely approximating the descending left and right L5 nerve roots and a mild disc bulge at L3-L4.  [*Id*.]  Dr. Scott diagnosed a probable torn left medial meniscus and degenerative lumbar disc disease with bulging disc at L4-L5 and L5-S1.  [R. 506.]

Plaintiff underwent surgery on his left knee on October 22, 2007.  [R. 438–39.]  On January 24, 2008, Plaintiff reported his knee was doing alright, that he could do stairs and was doing reasonably well.  [R. 443.]

A March 16, 2007, MRI of the lumbar spine showed

* trace disc space narrowing at L5-S1;

* desiccation at both L4-L5 and L5-S1;

* left and right L3 nerve roots exiting normally;

* prominent central bulging disc at L4-L5 which does closely approximate the descending left and right L5 nerve roots, greater on the right side with the left and right L4 nerve roots exiting normally;

* mild central/left paracentral disc protusion at L5-S1 which closely approximates both left and right S1 nerve roots with the spinal canal;

* left and right L5 nerve roots exit normally; and

* mild disc bulge at L3-L4.

[R. 445.] On May 30, 2008, Plaintiff was seen for a neurosurgical consult for low back and bilateral low extremity pain with numbness, tingling, and weakness. [R 447.] Plaintiff complained of:

* aching pain in both entire lower extremities;

* burning in both entire lower extremities;

* a cold sensation in both entire lower extremities;

20

     *       a sensation of heaviness in both entire lower extremities;

     *       shock-like pain in both entire lower extremities;

     *       stabbing pain in both entire lower extremities;

     *       numbness and tingling in both entire lower extremities.

[*Id*.]    Muscle strength and tone in the lower extremities were noted to be intact and symmetrical but straight leg raises were positive on both the left and right. [R. 448.] Treatment notes indicate Plaintiff's symptoms are consistent with L5-S1 disc compression of the nerve root and that jarring or compressing the spine with standing, sitting, or hitting a bump in his truck causes immediate midline lumbar pain radiating in an S1–L5 distribution and affecting his gait. [R. 449.]

An independent medical exam performed on April 30, 2009, by Dr. Lary R. Korn, D.O. ("Dr. Korn") [R. 472–75] showed Plaintiff's station and gait in a forward flexion at the waist and a bit tilted to the right with his upper body onto the cane.  [R. 473.] Plaintiff was also noted to have some central obesity. [*Id*.] Plaintiff had a full range of motion and 5/5 strength in his upper extremities.   [R. 474.]   Plaintiff had 5/5 strength in his lower extremities and his joints were unremarkable with the exception of his left knee.   [*Id*.] Plaintiff's spine was difficult to assess, however, due to the maintenance of abnormal posture with forward bending at the waist.  [*Id*.]  Plaintiff denied significant symptoms with palpation or axial loading; spinal rotation, however, provoked pain complaint. [*Id*.] Dr. Korn noted that Plaintiff's knee appeared not to be a problem with good motion and good function. [R. 475.]  With regard to Plaintiff's lower back, Dr. Korn noted it was difficult to make any comments regarding physical restriction or limitations due to the limited

information gathered by his motion demonstrations.   [*Id*.] Dr. Korn noted that seated straight leg raises were negative and there were no radicular findings in the left lower extremity.  [*Id*.]  Dr. Korn noted that it would be difficult for Plaintiff to perform heavy or general labor; long distance driving or other activities where there would be prolonged pressure on those disc areas would probably be unsuitable; and he declined to comment on Plaintiff's ability to ambulate without assistance or his ability to bear weight for any particular duration due to limitations in the exam.  [*Id*.]

On April 13, 2010, Dr. Theodore Swann ("Dr. Swann") completed a questionnaire opining that Plaintiff was disabled as of December 31, 2008.  [R. 551.] Dr. Swann noted that Plaintiff would continue to need medical care such as chronic pain management and chronic anxiety treatment, and would continue to require medications for pain and anxiety. [*Id*.] Dr. Swann opined Plaintiff would be limited to: lifting/carrying, either frequently or occasionally, zero pounds; pushing/pulling zero pounds; sitting 120 minutes at a time or a total of 6 hours in a work day; standing less than 5 minutes at a time and less than an hour in an 8 hour work day; and walking no more than 30 yards at one time. [R. 551.] Dr. Swann also noted that Plaintiff could not climb stairs, work off ground, bend/stoop, but could perform work overhead. [*Id*.]   Dr. Swann opined Plaintiff would need a sit/stand option; would need the option of taking unscheduled rest periods; and would have marked limitations in his ability to concentration or persist towards a task, handle stress and interact appropriately with others due to pain. [R. 552.] Due to his medications, Dr. Swann indicated Plaintiff would not be able to operate heavy or hazardous machinery or commercial vehicles.   [*Id.*] Dr. Swann estimated Plaintiff would be absent from work

greater than 15 days per month due to repeated hospitalizations, doctor's visits, his medical conditions and/or the side effects of his medication.   [*Id.*]

On May 22, 2010, Plaintiff was involved in a motor vehicle collision striking a tree at 50 mph and admitted to the emergency department at Oconee Medical center complaining of left lateral rib pain, left side abdominal pain, and left knee pain.  [R. 557.] Plaintiff also complained of sharp pain in his neck, left arm and left back.  [R. 560.]  A CT scan was taken demonstrating a hang-man's type fracture transversely at the base of the right pedicle and runs obliquely and laterally along the right traverse process.  [R. 563.] Plaintiff was diagnosed with a fractured C2 vertebra and the decision was made to transfer Plaintiff to Greenville Memorial for high level care.  [R.  558.]

On August 3, 2010, Plaintiff presented to Dr. John Johnson for cervical x-rays on follow-up on neck pain after his C2 fracture with complaints of stabbing pain in his posterior neck pain on the right side.  [R. 589.]  X-rays revealed good alignment and a fracture at C2 with minimal displaced lateral mass on the right and junction of lamina and body.  [R. 560.] Treatment notes also indicate Plaintiff's gait and station were normal.  [*Id.*] Plaintiff was seen by Dr. Stephen Gardner ("Dr. Gardner") on May 18, 2011, with complaints of pain in the neck, right shoulder and elbow, lower back and bilateral legs. [R. 649.]  Dr. Gardner found no evidence of radiculopathy on exam with localized segmental motion related pain. [R. 650.] Dr. Gardner advised that Plaintiff consider a referral for facet injections and possible rhizotomy and for an evaluation for spinal cord stimulator to relieve pain. [*Id.*]

Between January 2011 and June 2012, Plaintiff saw Dr. Charles Edsall ("Dr. Edsall") to discuss options for pain management and for depression and anxiety.  [R. 684–99.] Plaintiff was taking Lortab in combination with Motrin 2400–3200 mg daily, but indicated

23

the combination was not working as effectively as it used to work. [R. 689.]  Plaintiff complained of worsened neck pain, worsened back pain, worsened upper extremity pain and worsened lower extremity pain; associated symptoms included weakness, numbness, depression, anxiety, irritability, sleep disturbance and decreased appetite. [*Id.*]  Plaintiff's physical exams were generally normal, including normal gait and station. [R. 690, 693.] In June 2012, Plaintiff described his pain as constant, cramping, burning, dull, stabbing, throbbing, and tingling.  [R. 697.] On exam, Plaintiff showed straight leg raising at 80–90 degrees on the left; lower extremities 2+, and light touch right S1 numbness. [R. 698.] Reflexes and strength, however, were normal.  [*Id.*]

In March 2012, Plaintiff presented to Dr. G. Timothy Baxley ("Dr. Baxley") with Clemson Neurology with respect to his chronic pain. [R. 714.]  Plaintiff complained of having trouble standing, sitting and walking. [*Id.*]  Plaintiff was seeking a second opinion with respect to Dr. Gardner's recommendation of surgery. [*Id.*]  On exam, Dr. Baxley found Plaintiff had 5/5 strength in his upper and lower extremities, with some significant touch point tenderness in the lumbar area. [R. 715.]    Dr. Baxley planned to order a nerve conduction EMG bilateral lower extremities and lumbar spine; order an MRI of the lumbar spine; and review Dr. Gardner's records. [*Id.*]  In May 2012, Plaintiff returned to Dr. Baxley for EMG/NCS due to low back pain, antalgic posturing, and bilateral buttock and leg pain, and left-sided preponderance.  [R. 716.] Dr. Baxley also updated Plaintiff's most recent MRI of the lumbar spine and found it had gotten worse. [*Id.*]  Dr. Baxley noted foraminal encroachment with impingement of the left S1 nerve root with worsening disc extrusion at L5-S1, but no true nerve pinch seen radiographically on the right side. [*Id.*]  Dr. Baxley

24

diagnosed Plaintiff with bilateral S1 radiculopathy with left side most affected from a radiographic and clinical standpoint, secondary to a new and worsening disc extrusion seen on the most recent MRI of the lumbar spine. [*Id.*] Dr. Baxley noted that Plaintiff was in a significant amount of pain even on his pain medications and that he would refer Plaintiff back to Dr. Gardner for neurosurgical options as Plaintiff has failed lumbar ESI in the past. [*Id.*]

In April 2012, Dr. Trudy Lovejoy ("Dr. Lovejoy") conducted an MRI evaluation of the Plaintiff's lumbar spine including T1 and T2 sagittal and axial sequences, the later at the L3-4 through L5-S1 levels, angled for disc with no contrast. [R. 742.] The evaluation demonstrated loss of normal lumbar lordosis; no spondylolisthesis; no loss of vertebral body height; minimal loss of disc height at L4-5 and L5-S1 where there is also loss of disc signal suggesting desiccation. [*Id.*] At L4-L5, mild to moderate effacement of the thecal sac across the midline was noted, as well as narrowing of the right lateral recess with borderline impingement of the descending L5 nerve root on the right. [*Id.*] Additionally, at L5-S1, broad based disc protrusion was present which had significantly increased in size at the midline and to the left and now had a component of downward extrusion. [*Id.*] Impingement of and displacement of the S1 nerve root at its origin was noted on the left side but no true impingement of the right S1 origin was noted although there was contact. [*Id.*] No compromise of exiting nerve roots was noted. [*Id.*] Dr. Lovejoy's impression was noted as borderline impingement of the descending L5 nerve root on the right within its lateral recess at the L4-5 level; and impingement of the S1 nerve root origin on the left due to new left paracentral inferior disc extrusion. [*Id.*]

25

In an April 25, 2012 exam, Dr. Swann noted that Plaintiff's back and knee injuries had changed his life creating multiple challenges and limitations; that Plaintiff had not received optimal care due to his lack of insurance; and that he was just starting to pursue options to help reduce his pain after qualifying for medicare after the birth of his son.  [R. 719.]

In treatment notes dated June 2012,  Dr. Baxley found Plaintiff was not a candidate for any surgical interventions.  [R. 712.]  Dr. Baxley noted Dr. Lovejoy's findings that Plaintiff's MRI of the L-spine showed borderline impingement of the descending L5 nerve root on the right within its lateral recess at L4-L5, and impingement of S1 nerve root origin on the left due to new left paracentral posterior disk extrusion.  [*Id.*]  Dr. Baxley also noted that Plaintiff had a nerve conduction which showed bilateral S1 radiculopathy with the left side most affected from the radiographic and clinical standpoint, secondary to a new or worsening disk extrusion seen on the more recent MRI of the L-spine.  [*Id.*]

**Listing 1.04 Analysis**

Listing 1.04 provides as follows:

1.04    Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

        A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

        or

       B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

      or

       C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.

### ALJ's Decision

After the remand from the Appeals Council, the ALJ explained his consideration of

Listing 1.04 as follows:

> With regard to listing 1.02 and subsection C of listing 1.04, the record does not establish that the claimant has an inability to ambulate effectively. While the claimant has used a single-handed cane in the past, at the time of the first hearing, the claimant indicated that he was no longer using a cane because of his recent neck injury. He further stated that he was not using a wheelchair/scooter or any other assistive device to ambulate. With regard to the other subsections of listing 1.04, there is no evidence of spinal arachnoiditis. Moreover, the claimant does not have limitation of motion, motor loss, sensory/reflex loss and positive sitting and supine straight leg raise tests. While the claimant has demonstrated some such signs/symptoms at times (2F), he has not persistently had the full array of them. As discussed below, the medical evidence repeatedly provides that the claimant demonstrated intact sensory function, normal reflexes, and full motor strength in all areas. While the claimant has exhibited limited range of lumbar motion at times, he has not consistently had positive sitting and supine straight leg raises upon examinations during the period at issue.

[R. 17.]

Pertaining to the RFC analysis, the ALJ also selectively discussed and considered the medical evidence of record indicating that Plaintiff exhibited negative straight leg raises; had intact and symmetrical motor strength; that claimant's bulging disc did not directly contact the nerves or displace them; exhibited normal lumbar range of motion; had no complaints of numbness or tingling and had intact light touch sensation; had full range of motion in the bilateral hips and thighs without pain; had normal and symmetrical muscle tone in all four extremities; exhibited no pathological reflexes and had intact sensory functioning in the lower extremities; and that while examination did show light touch right S1 numbness and straight leg raising at 80-90 degrees on the left, Plaintiff had no tenderness on palpation in the lumbar spine and full range of motion in the bilateral lower extremities. [R. 24–26.]

### Discussion

Plaintiff contends the ALJ erred in evaluating whether Plaintiff's impairment met or equaled Listing 1.04 because the medical evidence of record shows Plaintiff met each element. [Doc. 12 at 8.] The Commissioner contends the ALJ's decision is supported by substantial evidence because the objective medical evidence shows that Plaintiff repeatedly exhibited intact sensory function, normal reflexes, and full motor strength in all areas. [Doc. 13 at 16.] The Court agrees with Plaintiff to the extent that the Commissioner did not adequately discuss Plaintiff's evidence related to Listing 1.04.

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that, without identifying the relevant listings and comparing the claimant's

28

symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*,  No. Civ.A. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d at 1172)).

Upon review, the Court notes the ALJ failed to explain why the evidence identified by Plaintiff as supporting his claim that his impairments met Listing 1.04 was insufficient to support such a finding.  It is the duty of the ALJ to resolve conflicts in the evidence of record.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (1990).  However, without a discussion of the conflicting evidence, it is difficult for a reviewing court to (1) track the ALJ's reasoning and be assured that all record evidence was considered and (2) understand how the ALJ resolved conflicts in the evidence.  *See Mellon v. Asture*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) ("[S]o long as the narrative opinion *is sufficien[tl]y detailed and cogent on the ultimate issues* for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial evidence in the record, then the lack of specific findings on more subordinate issues . . . does not require reversal." (emphasis added)).

Here, the ALJ's Listing 1.04 analysis is remarkable for its abbreviated and inadequate consideration of Plaintiff's indisputably significant spinal impairments evidenced by, at a minimum, multiple MRIs and a nerve conduction study.  The ALJ summarily concluded that the "record does not establish that the claimant has an inability to ambulate

29

effectively"; "there is no evidence of spinal arachnoiditis"; and "the claimant does not have limitation of motion, motor loss, sensory/reflex loss and positive sitting and supine straight leg raise tests." [R. 17.]    The ALJ also concluded that "[while] the claimant has demonstrated some such signs/symptoms at times (2F), he has not persistently had the full array of them. [*Id*.] However, as Plaintiff contends, there is evidence in the record that his impairment exhibited each of the criteria of Listing 1.04A and that the law does not require all of the signs/symptoms to be present at the same time. *See Radford v. Colvin*, 734 F.3d 288, 293–94 (4th Cir. 2013).

There are numerous findings in the record which evidence elements required to show severity under Listing 1.04 for which the ALJ failed to address and/or explain his assignment of weight.  For instance, the ALJ found that Plaintiff did not meet Listing 1.04 because he "does not have limitation of motion, motor loss, sensory/reflex loss and positive sitting and supine straight leg raise tests " and while Plaintiff "has demonstrated some such signs/symptoms at times (2F), he has not persistently had the full array of them." [R. 17.] However, a review of the medical evidence appears to suggest numerous instances suggesting compromise of a nerve root or the spinal cord with evidence of nerve root compression accompanied by limitation of motion, motor loss, sensory or reflex loss and positive straight-leg raising test.  For instance, the medical evidence of record shows:

* Plaintiff's symptoms included numbness and tingling in both entire lower extremities [R. 447, 709];

* Range of motion in the lumbar spine limited to flexion and extension at 16° and lateral flexion at 10°–35° [R. 477];

* positive straight leg raises on both the left and right [R. 448];

30

\*        Plaintiff's symptoms consistent with L5-S1 disc compression of the nerve root [R. 449];

\*        complaints of numbness and tingling in both entire lower extremities [R. 447];
\*        light touch right S1 numbness [R. 698];

\*        foraminal encroachment with impingement of the left S1 nerve root [R. 716];

\*        borderline impingement of the descending L5 nerve root on the right [R. 742];

\*        impingement and displacement of the S1 nerve root noted on the left but no true impingement on the right although there was contact [R. 742];

\*        bilateral S1 radiculopathy[10] with the left side most affected [R. 712].

Again, while it is within the purview of the ALJ to weigh the evidence and determine what evidence is more credible, the ALJ must provide an explanation of how he came to his conclusion; otherwise proper judicial review may not occur.   While the ALJ acknowledged some of the above-referenced evidence in his discussion of his RFC assessment, the ALJ failed to offer any explanation as to how this evidence informed any portion of his Listing analysis decision.  Moreover, the ALJ also discussed evidence that conflicts with the evidence suggesting that Plaintiff's impairment meets Listing 1.04A, but the ALJ's decision does not contain any discussion of how he resolved the conflicts in the evidence.    Thus, with respect to the evidence supporting Plaintiff's claim that his impairment met Listing 1.04A, without a discussion of how the ALJ weighed and resolved conflicts in the evidence, the Court is unable to find that the ALJ's decision is supported by substantial evidence.

---

[10]Radiculopathy is a disease of the nerve roots, and nerve root compression is a form of radiculopathy.  *Hays*, 907 F.2d at 1457 nn. 4, 5.

Furthermore, the ALJ's finding that Plaintiff "demonstrated some such signs/symptoms at times" but "has not persistently had the full array of them" is contrary to law.  In *Radford v. Colvin*, the Fourth Circuit opined that, in construing the regulations related to Listing 1.04, "[i]t would be peculiarly redundant to require that a claimant  prove that his impairment will last or has lasted at least 12 months and that he produce medical examinations showing that each symptom in Listing 1.04A presents either simultaneously or in sufficiently close proximity such that an ALJ could conclude that the claimant's impairment will last or has lasted at least 12 months.  *Radford*, 734 F.3d at 293–94.  Listing 1.04A requires a claimant to show only what it requires him to show: that each of the symptoms were present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months.  *Id*. at 294, *citing* 20 C.F.R. § 404.1509.  A claimant need not show that each symptom was present at precisely the same time—*i.e*., simultaneously—in order to establish the chronic nature of his condition.  *Id*.

Additionally, while the ALJ found Plaintiff could walk 4 hours out of an 8-hour day [R. 19], there is no indication of how the ALJ came to that conclusion in light of evidence of limitations in Plaintiff's ability to ambulate.  The ALJ appears to have discounted Plaintiff's limitations in ambulation based on the fact that he stopped using a cane for ambulation. [R. 22, "However, at the hearing, the claimant acknowledged that he was no longer using any such device [cane or other assistive device.]"].  However, the regulations define the phrase "inability to ambulate effectively" as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate,

32

sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [ ] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.... To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, ... the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(I)-(2) (emphasis added). A review

of the evidence shows that:

* Plaintiff reported that crutches were essential because of the pain in his back and left leg [R. 505];

* Plaintiff's station and gait were in a forward flexion at the waist and a bit tilted to the right with his upper body onto the cane [R. 473];

* Plaintiff testified to using a motorized cart or power chair to get around when shopping at Wal-Mart or Lowe's [R. 127];

* Plaintiff testified that he could not stand or walk for five hours out of an eight hour day because it hurt too much to walk or stand that much and that he'd have to alternate [R. 116–17];

* the ALJ noted Plaintiff testified to being limited to walking 15 to 20 minutes at a time [R. 21]; and,

* the ALJ noted that disability reports indicate Plaintiff cannot walk or stand for very long and requires a cane for ambulation [R. 21].

The reason Plaintiff gave, however, for no longer using a cane was due to the

additional pressure it put on his neck, not that he no longer required assistance. [R.

20–21.] And while it is the ALJ's duty to weigh the evidence and make findings, the Court

33

cannot find that the ALJ's conclusion that "the record does not establish that the Plaintiff had an inability to ambulate effectively" [R. 17] is supported by substantial evidence without some reasoning for this conclusion from the ALJ.  Accordingly, because the ALJ's Listing 1.04 analysis was abbreviated, inadequate, and failed to consider the evidence showing Plaintiff had significant spinal impairments, it is recommended that this action be reversed on that ground alone.  The ALJ's Step 3 Listing analysis is not supported by substantial evidence and is contrary to applicable law.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain the Listing analysis is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ failed to follow the treating physician rule in weighing the opinion of Dr. Theodore Swann and relied on flawed VE testimony.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.


                                          s/Jacquelyn D. Austin
June 17, 2015                             Jacquelyn D. Austin
Greenville, South Carolina                United States Magistrate Judge


34